# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 12, 2011 Session

## STATE OF TENNESSEE v. SEAN HIGGINS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-08275      Chris B. Craft, Judge**

---

**No. W2010-00779-CCA-R3-CD - Filed April 30, 2012**

---

A Shelby County Criminal Court jury found the appellant, Sean Higgins, guilty of driving under the influence (DUI) and reckless driving. The appellant received a total effective sentence of eleven months and twenty-nine days. On appeal, the appellant argues that the evidence was insufficient to sustain his convictions and that the trial court's allowing the State to question the appellant regarding "the whereabouts of his witnesses and why they were not present to testify on his behalf" shifted the burden of proof to the appellant. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Paul J. Springer, Memphis, Tennessee, for the appellant, Sean Higgins.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Edie Sellers, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

At trial, Shelby County Sheriff's Deputy Jason Brown testified that on January 23, 2007, he was parked in the median on Highway 385 around Houston Levee, running stationary radar on eastbound traffic. Around 10:00 p.m., Deputy Jason Brown saw the appellant driving a Mazda eighty-one miles per hour in a sixty-five miles per hour zone. He

activated his emergency lights, and the appellant stopped around Highway 385 and Forest Hill Irene.

Deputy Jason Brown said that after he parked, he approached the appellant, identified himself, and told the appellant the reason for the stop. He asked the appellant for his driver's license and proof of insurance. The appellant provided his driver's license but could not provide proof of insurance. He explained that the car belonged to a friend.

Deputy Jason Brown asked the appellant where he was going. The appellant pointed and responded, "40 and Sycamore View." However, Deputy Jason Brown said that the appellant was in fact headed "towards Collierville on 385," which was approximately ten to fifteen miles from where the appellant thought he was. The appellant's speech was slurred, he had a strong to moderate smell of alcohol, he was confused about his location, and his eyes were watery and bloodshot. Based upon his observations, Deputy Jason Brown concluded that the appellant was intoxicated.

Deputy Jason Brown asked the appellant to step out of the car. The appellant had difficulty getting out of the car and "had to use the car to lift himself out and kind of lean[ed] on it." The appellant swayed when he stood and staggered when he walked. Deputy Jason Brown asked the appellant to perform a field sobriety test, and the appellant agreed. Deputy Jason Brown told the appellant to do a walk-and-turn test. According to the officer, the appellant lost his balance during the instructions, stopped while walking, stepped off the invisible line, used his arms to balance, lost his balance while turning, and walked an incorrect number of steps.

Deputy Jason Brown believed the appellant was intoxicated, and he radioed for a DUI officer to come to the scene. Metro DUI Deputy Danny Brown arrived approximately one to two hours after the initial stop. The officers thought it was unsafe for the appellant to attempt another field sobriety test on the side of the road because he might fall or stumble into traffic. Therefore, the officers took the appellant to a side street, beside a Chevrolet dealership, where Deputy Danny Brown had the appellant perform field sobriety tests. Deputy Jason Brown said he saw the appellant perform the tests and thought there was little difference from his previous performance. Deputy Jason Brown stated that he charged the appellant with reckless driving because of the speed and the appellant's intoxication.

Deputy Danny Brown testified that he arrived at the scene around 11:45 p.m. Deputy Danny Brown said that the appellant had a moderate odor of alcohol, his speech was slurred, he swayed when he stood, and his eyes were watery and bloodshot. When the appellant was asked for his address, he gave at least two different addresses to the officers. Deputy Danny Brown said the appellant was cooperative and talkative; however, the effects of alcohol were

obvious.

After the officers and the appellant moved to a side street, Deputy Danny Brown had the appellant perform two field sobriety tests: the walk-and-turn and the one-legged stand. Deputy Danny Brown stated that the appellant performed poorly on both tests. Specifically, he said that during the walk-and-turn test, the appellant lost his balance during the instructions, started too soon, stopped while walking, did not touch his heel to his toes on several steps, used his arms to balance, lost his balance while walking, did an incorrect turn, and started on the wrong foot when he turned to walk back to the officers. On the one-legged stand test, the appellant swayed during the instructions, did not raise his foot as high as he was instructed, touched his heel to the ground four times, used his arms to balance, and slurred while counting.

Although the initial field sobriety test administered by Deputy Jason Brown was not recorded, a video of the tests Deputy Danny Brown gave the appellant was shown to the jury. Deputy Danny Brown said that the appellant's poor performance was "kind of hard to see on the tape."

The forty-six-year-old appellant testified that on the night of January 23, 2007, he drank two beers around 8:00 p.m. At 9:30 p.m., his friend, David Simpson, called and asked the appellant to meet him at the Fire and Ice Club and drive his car to Simpson's house off Byhalia Road in Collierville. The appellant agreed, and his neighbor, "Dirty Red," drove him to the club. While at the club, the appellant ate some of Simpson's "hot wings" and drank only a Sprite. Around 10:00 p.m., the appellant left the club and drove toward Simpson's house. During the drive, he was stopped by Deputy Jason Brown.

The appellant said that Deputy Jason Brown asked for the appellant's driver's license and proof of insurance. The appellant provided his driver's license, but he told the officer he did not have proof of insurance because he did not own the vehicle. The officer asked the appellant to step out of the vehicle and told him that he was under arrest for DUI. Approximately thirty minutes after the stop, the appellant was taken to a side road and was asked to perform a field sobriety test. The appellant said that it was dark, around twenty-two degrees, windy, and had rained earlier. The appellant said he was wearing a t-shirt and a long-sleeved shirt.

The appellant explained that he gave the officers different addresses because he had recently moved two or three times. The appellant said he was also afraid, nervous, and humiliated because he had never been arrested. The appellant said that he was not impaired or tipsy but that he "might have been a little sleepy because it was twelve-something at night, and [he] had been up all day."

The appellant denied that Deputy Jason Brown asked him to perform a field sobriety test shortly after he was stopped. He also denied that he had to use the car to support himself as he exited the vehicle. Further, he denied telling Deputy Jason Brown that he was going toward Sycamore View. The appellant said that he did well on the field sobriety tests and that he did not smell like alcohol.

The jury found the appellant guilty of DUI and reckless driving. On appeal, the appellant argues that the evidence was insufficient to sustain his convictions and that the trial court erred in allowing the State to question the appellant regarding "the whereabouts of his witnesses and why they were not present to testify on his behalf," which questions shifted the burden of proof to the appellant.

## II. Analysis

### A. Sufficiency of the Evidence

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

We will begin by examining the appellant's DUI conviction. Tennessee Code Annotated section 55-10-401(a)(1) provides that it is unlawful for any person to drive or be in physical control of an automobile on any public roads and highways or on any streets or alleys while under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system. The appellant contends that the video of the field sobriety tests "contradict[s] the testimony of the officers" and that "a fair interpretation of the facts indicates that the witnesses were, at best[,] contradictory or[,] at worst, not telling the truth." Specifically, the appellant contends that "a review of the testimony and the field sobriety form indicates conflicting assessments of the appellant."

As we earlier noted, credibility is an issue to be determined by the trier of fact, not the appellate court. Pruett, 788 S.W.2d at 561. The jury, as the trier of fact, was to decide whether there were discrepancies in the State's proof and the effect, if any, of such discrepancies. The jury, as was its prerogative, chose to accredit the testimony of the officers, not the appellant, regardless of any discrepancies in testimony. See State v. Amos Oyeleye, No. W2009-00085-CCA-R3-CD, 2010 WL 1032657, at *4 (Tenn. Crim. App. at Jackson, Mar. 22, 2010), perm. to appeal denied, (Tenn. 2010). In the light most favorable to the State, the proof reflected that Deputy Jason Brown observed that the appellant had a strong to moderate odor of alcohol; was unsteady on his feet; had slurred speech and watery, bloodshot eyes; and was unsure of his location. The appellant failed the field sobriety test given by Deputy Jason Brown. Further, Deputy Danny Brown testified that when he encountered the appellant, the appellant demonstrated obvious signs of intoxication and was unable to successfully perform the field sobriety tests. Based upon the foregoing, we conclude that the evidence was sufficient to sustain the appellant's conviction for DUI.

Regarding the reckless driving conviction, the appellant argues that the only basis for the charge of reckless driving was that he was driving eighty-one miles per hour in a sixty-five mile per hour speed zone. The appellant, citing State v. Wilkins, 654 S.W.2d 678 (Tenn. 1983), contends that speed alone is insufficient to sustain a conviction for reckless driving. The State argues that the evidence is sufficient to sustain the appellant's reckless driving conviction based upon the appellant's speed and intoxication. We agree with the State.

Tennessee Code Annotated section 55-10-205(a) provides that "[a]ny person who drives any vehicle in willful or wanton disregard for the safety of persons or property commits reckless driving." Our supreme court has stated that "[w]illful and wanton disregard for another's safety is a factual question properly determined from all the circumstances." Wilkins, 654 S.W.2d at 680. In the instant case, the appellant's speed and intoxication were used to support his reckless driving conviction. See State v. James Kelley, No. W2006-01298-CCA-R3-CD, 2007 WL 2044238, at *2 (Tenn. Crim. App. at Jackson, July 17, 2007). The jury, as fact finder, heard the proof and determined that the appellant's conduct constituted driving with a "willful or wanton disregard for the safety of persons or property." Tenn. Code Ann. § 55-10-205(a). We will not now substitute our judgment for that of the jury. Accordingly, we conclude that there was sufficient evidence to sustain the appellant's reckless driving conviction.

## B. Burden of Proof

As the appellant's final issue, he contends that the trial court erred by allowing the State to question him regarding his failure to call two witnesses whom he alleged would testify that he did not drink alcohol while at the club. The appellant contends that the State's

questions suggested to the jury that the appellant had the burden to prove his innocence. The State asserts that the appellant made his credibility relevant by testifying that he was not intoxicated. Further, the State contends that the trial court properly instructed the jury that the State had the burden of proof. Finally, the State contends that any error in this regard was harmless.

During direct examination, the appellant testified that around 8:00 p.m., he drank two beers at home. Around 9:30 p.m., Simpson called and asked the appellant to meet him and drive Simpson's car home. The appellant said that "Dirty Red" drove him to Fire and Ice, where he met Simpson. The appellant stated that while he was at Fire and Ice, he ate "hot wings" and drank only a Sprite. Thereafter, the appellant left in Simpson's car and was stopped by police.

During cross-examination of the appellant, the State asked the appellant if he had saved his receipt from Fire and Ice to prove that he drank only Sprite. The appellant responded that he did not anticipate that he would be arrested. The State then asked the appellant if he had attempted to locate Simpson, "Dirty Red," or other witnesses who could testify that he was not drinking alcohol at the club. The appellant said no. Next, the State asked if the appellant had asked Simpson to testify on his behalf. The appellant said that he and Simpson had a "falling out" and that he did not know where Simpson lived.

The appellant then objected to this line of questioning, arguing that the State was attempting to shift the burden of proof to the appellant. The prosecutor responded that she was attempting "to lay the foundation for the missing witness."[1] The court stated:

> Well, his testimony was that he doesn't know where he is now, but I think she has a right to ask him if he tried to locate him or ask him to come testify.
>
> I will give the jury instruction, of course, that the State has the burden of proof, but inasmuch as he's testified that he's his friend but he doesn't know his name, I think she has a right to cross-examine him about why these people – whether or not he asked these people.

---

[1] The missing witness rule allows a party to argue and have the jury instructed "that if the other party has it peculiarly within his power to produce a witness whose testimony would naturally be favorable to him, the failure to call that witness creates an adverse inference that the testimony would not favor his contentions." State v. Middlebrooks, 840 S.W.2d 317, 334 (Tenn. 1992).

He's already said that he doesn't know where he is now, so I don't think the missing – there's been no proof at this point that he was in exclusive control of this person if he doesn't know where he is, but I think she has the right to go into it, just not have a jury charge on it.

The State then asked the appellant, "Would it be important for you to make an attempt to try to locate [Simpson] to come to Court?" Next, the State asked whether Simpson or "Dirty Red" could testify that he did not drink any alcohol around them. The appellant said that they could testify that he did not drink alcohol around them that night.

During the jury instructions, the trial court told the jury that the State "has the burden of proving the guilt of the [appellant] beyond a reasonable doubt, and this burden never shifts but remains on the state throughout the trial of the case. The [appellant] is not required to prove his innocence."

On appeal, the appellant complains that the State's questions "in [e]ffect . . . shift[ed] the] burden of proof, thus allowing the jury to improperly believe that the appellant was required to put forth proof of his innocence." The appellant contends that the trial court committed plain error by allowing the State to pursue this line of questioning. See Tenn. R. App. P. 36(b). However, the record reflects that the appellant contemporaneously objected to the State's questions, arguing that the questions shifted the burden of proof and that the appellant raised the issue in his motion for new trial. Therefore, we are not constrained to address this issue as plain error.

As we earlier noted, the trial court specifically instructed the jury that the State was required to prove the appellant's guilt and that the appellant was not required to prove his innocence. Moreover, the trial court also instructed the jury that comments by counsel were not evidence. Ordinarily, juries are presumed to follow the instructions given by a trial court. State v. Young, 196 S.W.3d 85, 111 (Tenn. 2006).

Moreover, we note that the propriety, scope, manner, and control of the cross-examination of witnesses rests within the discretion of the trial court. State v. Dishman, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995). "A witness may be cross-examined on any matter relevant to any issue in the case," including credibility. Tenn. R. Evid. 611(b); see also Neil P. Cohen et al. Tennessee Law of Evidence § 6.11[5][a] (LEXIS publishing, 6th ed. 2011). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. The appellant testified on direct examination that on the night in question he was not intoxicated

and specifically disputed the testimony of the officers regarding the appellant's statements and behavior, raising an issue of credibility. Therefore, the existence of the potential witnesses and their ability to testify regarding whether the appellant drank alcohol that night was particularly relevant. Thus, we conclude that the trial court did not err by allowing the State to ask questions regarding the whereabouts of Simpson and "Dirty Red."

### III.  Conclusion

In sum, we conclude that there was sufficient evidence adduced at trial to sustain the appellant's convictions and that the trial court did not err in allowing the State to question the appellant about potential witnesses. Accordingly, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE